972 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James CHATMAN, Defendant-Appellant.
 No. 91-1883.
 United States Court of Appeals, Sixth Circuit.
 Aug. 5, 1992.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, James Chatman, appeals his conviction upon a jury verdict for possession with intent to distribute cocaine base and for aiding and abetting the same. For the reasons that follow, we affirm the district court's judgment.
 
 
 2
 * The sole issue Chatman raises in this appeal is whether there existed sufficient evidence to support his conviction. Much of the evidence consists of the testimony of the arresting officers--Agents Anthony Primack and Regan Scott of the Bureau of Alcohol, Tobacco, and Firearms--and of Chatman and other witnesses of the events that led to Chatman's arrest, which took place on the evening of January 8, 1991, around 10:20 p.m. The facts are hotly disputed.
 
 
 3
 The agents' version is as follows. Scott had at some prior time arranged with a Lemuel Neely for a meeting to take place in the parking lot of the Big Top Party Store, near Warren and Vinewood streets in Detroit. The purpose of the meeting was for Scott and Primack to purchase some cocaine and a sawed-off shotgun from Neely. Scott drove the agents' vehicle into the parking lot at approximately 10:20 p.m. A few minutes later, Neely and Chatman approached the car. Neely came up to the driver-side window; Chatman stood about five or six feet in front of the car.
 
 
 4
 Neely stated to the agents that "his man," gesturing toward at Chatman, wanted to see the money. J.A. at 16. Scott displayed some money that he had in his front pocket. At this point, Neely walked over to where Chatman was standing, and the two exchanged words, out of the hearing of the agents. Chatman then handed Neely a clear plastic bag that contained a white, powdery substance, later identified and stipulated to as cocaine base. Neely returned to the driver's window and handed the bag to Scott, stating "[t]his ounce is worth $1300." Id. at 17. Scott took the bag and inspected the contents; he let Primack inspect it as well. Not more than a minute had passed when Chatman walked around to the driver's window and said that the deal was taking too long. At this point, Scott gave the arrest signal. Neely fled, but Chatman was arrested on the spot.
 
 
 5
 Chatman's version of the events, supported by his own testimony and that of two witnesses, is very different. Briefly, he claims that, having been invited to Neely's home earlier in the afternoon of January 8, 1991, he decided to drop by around 9:40 that evening, although he was not expected at that time. He drove his mother's car to Neely's house. Neely came out and sat in the car. At some point Neely asked Chatman to drop him off at the Big Top Party Store. Chatman complied, letting Neely out in the driveway. He began to back out of the driveway, but changed his mind and decided to go into the store for some potato chips and a soda. He parked directly in front of the door and entered, passing one of the witnesses, Kenneth Little, on his way in. He purchased his items and walked out. While he was still attempting to deactivate his car alarm, the two agents came up, announced themselves and placed him under arrest. The other witness, Lenell Johnson, was an employee of the Big Top, who claims, as does Little, to have seen Chatman first inside the store purchasing chips and soda, and then outside being handcuffed beside his car by the agents. Little also testified that he was arrested as he came out of the store right behind Chatman. Little said that the agents mistook him either for the driver of Chatman's car or for Neely, who fled the scene and was not arrested until later. He claims that he was released five minutes later.
 
 
 6
 On January 29, Chatman appeared for his arraignment on a one-count indictment charging him and Neely with possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (1988), and aiding and abetting possession with intent to distribute cocaine base, in violation of 18 U.S.C. § 2 (1988). Neely pleaded guilty to the indictment and was sentenced to eighty-four months. A jury trial commenced on April 29, 1991. Besides the testimony of the parties as discussed above, there was additional testimony from a Michigan State Police Crime Laboratory employee concerning physical evidence of the crime Chatman allegedly committed. That employee testified that no fingerprints were found on the plastic bag, but noted that the absence of fingerprints could be attributable to a number of factors.
 
 
 7
 Chatman's counsel moved for a directed verdict both at the close of the government's evidence and at the close of all the evidence. Both motions were denied. On April 30, the jury returned a guilty verdict. On July 25, 1991, Chatman was sentenced to sixty-three months' imprisonment. He filed a timely notice of appeal on the following day.
 
 II
 
 8
 The standard of review for a claim that the evidence is insufficient to support a conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). A finding of guilt may be based entirely upon circumstantial evidence, and the evidence need not "remove every reasonable hypothesis except that of guilt." United States v. Stone, 748 F.2d 361, 363 (6th Cir.1984), coram nobis denied, No. 88-5445 (6th Cir. Feb. 20, 1990) (Westlaw, CTA6 database), and cert. denied, 111 S.Ct. 71 (1990).
 
 
 9
 We have examined Chatman's claim under the above standard, and we conclude that the prosecution did offer sufficient evidence to support Chatman's conviction. Chatman observes correctly that the prosecution offered no extrinsic evidence; the police laboratory experts could not identify any fingerprints on the plastic bag containing the cocaine. We also recognize Chatman's argument that Agents Scott and Primack were unable to identify the source of light that made it bright enough for them to identify Chatman and Neely in a parking lot at night. Little testified that the absence of light in the parking lot caused the agents to arrest him, mistaking him for Neely. Although Little was detained for a few minutes at the scene of the crime, the prosecution asserts that this procedure was followed for security reasons, not because he was suspected to be one of the parties to the deal described by the agents.
 
 
 10
 The above "inconsistencies" are the primary bases for Chatman's argument that the district court erred in denying his motions for acquittal. He contends that the prosecution's case consists solely of the agents' words against his and his witnesses'. That final argument, however, illustrates why we may not reverse the district court's judgment in this case: When the question is whether to believe certain witnesses over others, the decision belongs solely to the jury. See United States v. Ashworth, 836 F.2d 260 (6th Cir.1988) (holding that the appeals court may not sit as a "thirteenth juror" to judge witness credibility or re-weigh evidence). If we believe that any rational jury could believe the agents' words over Chatman's and his witnesses', then Chatman has not proved that the evidence was insufficient. Whatever reasons the jury might have had to disbelieve the agents' testimony, it had a number of reasons to doubt the credibility of Chatman and Little. Chatman originally lied about his identity to the agents and to court officers. Moreover, his and Little's testimony conflicted as to the amount of time between Chatman's exit from the store and his arrest. Upon these facts, we cannot say that the jury below was irrational; thus, Chatman's claim must fail.
 
 III
 
 11
 The district court's judgment of conviction is AFFIRMED.